OPINION OF THE COURT
Harold J. Rothwax, J.
The defendant moves pursuant to CPL 30.20 and 30.30 (1) to dismiss the indictment for failure to afford him the statutory and/or constitutional right to a speedy trial. The court, based upon the movant’s papers and minutes of the previous proceedings upon the indictment, finds the history of the prosecution as follows:
On December 19, 1984 the defendant and seven others were arrested in the course of an alleged sale of almost 15 ounces of cocaine. This defendant was arraigned on a felony complaint and posted bail on December 20. An indictment was voted December 21 and failed December 27 (8275/84). This defendant and a codefendant, Brian Reilly, were charged with criminal sale and with criminal possession of a controlled substance in the first degree and with possession in the seventh degree, all in connection with the alleged sale. The alleged buyers were similarly indicted for possession. Additionally, this defendant and his wife were indicted for possession of a large quantity of drugs and weapons in their home.
The defendants were arraigned on the indictment on January 14, 1985. From that date until March 21, no motions (except demands for discovery pursuant to CPL 240.20) were filed. The defendant requested leave to obtain new counsel on January 31 and new counsel entered the case on March 1. The People supplied counsel with copies of the eavesdropping and search warrants and applications on that date. Despite the court’s twice indicating (on Mar. 21 and on Apr. 17) that defendant had a final opportunity to file motions, no omnibus motion was filed until May 13. (A formal motion for discovery was filed on Mar. 21.)
The People responded to defendant’s discovery motion on June 11 and to the omnibus motion on July 23. The court charged three weeks against the People, due to the prosecuting attorney’s vacation schedule. Following the People’s initial reply to defense motions, an exchange of defense motions and prosecution replies continued until November 26. During this period the motions were under consideration by the court.
On January 31, 1986 the court rendered its written opinion dismissing the charges of possession in regard to defendant’s *172 home, as a result of suppression of evidence seized pursuant to a search warrant improvidently issued. The case was then set down for hearing on the issue of minimization under the eavesdropping warrant, and for trial. On February 18, the court denied defendant’s motion to reargue its prior decision.
On February 28, 1986 when the case was scheduled for trial, the assigned prosecutor was already engaged in trial in another matter. Defendant’s counsel stated to the court that plea negotiations were in progress, in any event, and that there was a likelihood of disposition by plea. Prosecution counsel was again on trial on March 17 and the subsequent adjournment to May 8 was at the People’s request. On May 8, codefendant’s counsel was engaged in another trial. A further adjournment from May 15 to 28 was at the People’s request.
Finally, on May 28, 1986 the People announced their readiness and moved the case to trial from the Calendar to a Trial Part. The matter was adjourned from day to day while defendant considered the People’s plea offer. On May 30, the defendant and his codefendant Reilly withdrew their pleas of not guilty and offered to plead guilty to criminal sale of a controlled substance in the second degree, upon an agreement that each would receive a sentence of from three years to life imprisonment. As part of the agreement Reilly was to testify against the "remaining codefendants” who were, as of then, the alleged buyers.
Ordinarily, the foregoing review of the facts would suffice to resolve the issue since a plea of guilty constitutes a termination of the prosecution (CPL 1.20 [13]; see, e.g., People v Matthews, 71 AD2d 864 [2d Dept 1979]). The circumstances surrounding the entry of the plea here were, however, extraordinary and require further detailed discussion.
The trial court conducted an allocution covering 30 transcribed pages. The court began by asking the defendant if he understood that his counsel had asked the court "to approve or give my consent to your taking back your not guilty plea * * * [and] to approve or give my okay to your pleading guilty to the crime of criminal sale of a controlled substance in the second degree, a class A-2 felony, to take care of this entire indictment.” The defendant stated that it was his understanding and his desire. The court then proceeded to explain to the defendant in detail that the plea had the legal effect of a conviction after trial; that there would be no trial; that the prosecution would be relieved of its burden of proof; that the *173 defendant would forfeit his role in jury selection, and his rights to hear the witnesses against him, to have counsel cross-examine the witnesses and to expose untruths or mistakes in their testimony, to have the court pass upon the sufficiency of the People’s case, to testify in his own behalf or not to testify if he so chose, to call witnesses, to participate in his defense, and to have the jury hear the law, deliberate, and render a unanimous verdict of guilt or a verdict of not guilty. After each point, which the court explained at length and in lay terms, the defendant indicated that he understood. The court then asked if defendant still wanted his plea taken and defendant replied affirmatively. The court then, after advising defendant that he would be waiving his privilege against self-incrimination, which "nobody in the world could force you to do”, asked the defendant if he were willing to state his involvement in the crime. He agreed. The prosecutrix stated what she would prove at trial, in detail, including the content of intercepted telephone calls between Reilly and the buyers and between Reilly and the defendant; physical surveillance of meetings and of the transaction; and the seizure and analysis of the narcotics. The prosecutrix stated that the witnesses were then available. After Mr. Reilly spoke at length, the defendant described his arrangement to supply Reilly with 15 ounces of cocaine for resale, for which he received $16,000 and admitted the occurrence of the transaction as described. The court then recited its understanding of the agreed upon sentence of from three years to life imprisonment. The defendant conceded that was his understanding; that no one had indicated the court would do otherwise; that no one had forced him to take the plea; and that he understood everything that had transpired. The court gave defendant a final opportunity to reject the plea. The defendant again repeated his wish to plead guilty. In conclusion the court stated that it was "withholding * * * consent to this plea this afternoon because should I give my consent it would be required that you be sent to prison immediately. I’m going to set the matter over for July 11, 1986 * * * at which time I will enter my consent or approval of this plea * * * [a]nd we’ll proceed to sentence.”
In the interim, the codefendants’, the alleged buyers, case proceeded to trial. Charges against the buyer’s agent were dismissed. The alleged buyer was acquitted on June 12, 1986. On July 10, defendant filed a motion "to withdraw [his] guilty plea”. In an affidavit defendant stated: "On May 30, 1986 / pleaded guilty to criminal sale of a controlled substance in the *174 second degree, a class A-2 felony, in satisfaction of the indictment against me and with the promise of a sentence of three years to life * * * [F]rom what I have been told, the fact of my innocence has been subsequently corroborated by the evidence at the [buyer’s] trial to the effect that I was not the seller of the drugs which Reilly attempted to sell to Hough. Apparently Reilly so testified * * * Thus Reilly can no longer testify against me and cause my wrongful conviction, as he could have prior to the time I offered my plea, without contradicting his sworn testimony at the Hough trial.” (Emphasis added.)
On July 11, when defendant’s case was called before the court, the court made the following observation: "The record will reflect that when the matter was last before me * * * [an] application was made * * * on behalf of Mr. Amendolara to withdraw his not guilty plea and to plead guilty to the crime of criminal sale of a controlled substance in the second degree. All proceedings were taken through the allocution of the clients. Because both defendants, through their lawyers, indicated because of the mandatory requirement of taking a plea that the defendants be then [remanded, they] requested that the matter be put off until today * * * at which time sufficient freedom would have been given to the defendants and that the only thing left at this stage would be for me to accept the plea. I accept the plea application made by Mr. Amendolara * * * The defendants will be arraigned on their pleas.”
Before the clerk of the court could repeat the allocution, defendant Reilly’s counsel moved to adjourn due to his wife’s pregnancy. This application was denied. The court then, referring to this defendant’s affidavit, asked if the codefendant intended to withdraw his plea. Mr. Reilly’s counsel indicated that if this defendant’s application were granted, Reilly would similarly move. When, at the court’s direction, the clerk asked Reilly if he pleaded guilty as indicated Reilly answered no "on the advice of counsel”. The court then declared "[i]nasmuch as no plea was entered, the defendant, Mr. Reilly, has no plea to withdraw”. Reilly’s counsel subsequently protested, as follows: "There is a plea. There was a plea allocution. The only thing remaining to be done was the court to direct entry of the plea. I ask the court to direct entry of the plea”. After a brief adjournment, the court again directed the clerk to arraign Reilly on the plea, which was done without further incident.
The court then directed the clerk to arraign this defendant upon the plea. The defendant stated: "I do not enter that *175 plea”. The court replied: "As I indicated, the purpose of adjourning the matter to today after a full allocution by Mr. Amendolara was to give Mr. Amendolara the opportunity to be at liberty until today when technically I was to accept the plea, and he would be required to be remanded. In view of having not pleaded guilty, I will fix a new trial date”. Upon the question of defendant’s bail status pending trial, defendant’s counsel stated: "[I]t was not our purpose to come here and simply * * * withhold consent to the entry of the plea and expect that somehow your Honor’s hands would be tied because indeed * * * it was upon the application of counsel * * * that the defendants would remain at liberty pending sentence that your Honor declined to enter the plea at that time. It was not for any other purpose * * * I didn’t rely on that. I did file [a motion to withdraw the plea]”.
In response, the court ruled that the "papers received by me * * * on behalf of Mr. Amendolara to withdraw a plea * * * obviously are moot because no plea was entered * * * [I]f the plea had been entered, I would have denied the application”. The defendant was remanded and the court sought to fix a date for trial. The prosecutrix indicated that her witnesses were then unavailable, that she was scheduled for two weeks’ vacation beginning on July 16, and was scheduled to begin trials on August 25 and September 4. On the next adjourned date, July 15, the prosecutrix informed the court that due to vacation scheduled, witnesses would be unavailable from August 28 through September 29. The case was adjourned to August 28. In the interim, on August 2, defendant posted bail. On August 12, the People moved to enforce defendant’s plea bargain. The motion was denied on September 17, and the matter was set down for trial on October 1. Prior to the adjourned date, the People filed a superseding indictment, adding a new count of criminal sale of a controlled substance in the first degree based upon an offer to sell, and a count of conspiracy in the second degree.
Defendant was arraigned on the instant, superseding indictment (7061/86) on October 1, 1986. The People again announced their readiness for trial. Defendant was continued on bail and pleaded not guilty. At defendant’s request, the case was adjourned for defense motions to November 17. Defense motions, including the instant speedy trial motion, were filed November 13. On the adjourned date, the Judge before whom the plea was offered, recused himself, and the matter was transferred to this court on November 19, 1986. The People *176 were given until January 7, 1987 to respond to defense motions. Upon the People’s failure to respond by the adjourned date, this court charged subsequent adjournments until February 4 to the prosecution, for a total of 28 days. On or about February 23, defendant filed a reply to the People’s response.
The motion to dismiss the indictment pursuant to CPL 30.30 and/or 30.20 is denied for the following reasons:
cpl 30.30
SECTION (1) (a)
Both the original (8275/84) and superseding (7061/86) indictments constitute a single criminal action for purposes of computing the six months within which the People must be prepared to proceed to trial under CPL 30.30 (1) (a) (People v Lomax, 50 NY2d 351 [1980]), and of computing time excludable under CPL 30.30 (4) (People v Sinistaj, 67 NY2d 236 [1986]).
The action commenced with the filing of a felony complaint on December 20, 1984, and the period until the defendant’s arraignment on the initial indictment on January 14, 1985, is chargeable to the People (People v Range, 80 AD2d 812 [1st Dept 1981]).
"Inasmuch as the Legislature intended CPL 30.30 to address delays caused by the People, the time required for defendant’s pretrial motions and his requested adjournments should be excluded.” (People v Worley, 66 NY2d 523, 527 [1985].) Thus, the period from the initial arraignment through the appearance of new counsel on March 1, and service of defendant’s omnibus motion on May 13, 1985 is excluded, as having been at the defendant’s request.
The People are entitled to a reasonable period in which to respond to defense motions (People v Torres, 60 NY2d 119, 127 [1983]). "There is no requirement that the People demonstrate that the defendant’s motions actually caused the People’s lack of readiness before such periods are excluded pursuant to CPL 30.30 (4) (a) "(People v Heller, 120 AD2d 612, 613 [2d Dept 1986]). The court before which the motions were made, having found that three weeks of the nine-week period prior to the People’s response was due solely to the prosecutrix’s unavailability, those three weeks are deemed charged to the People (cf., People v Newton, 120 AD2d 751, 752 [2d Dept 1986]).
After submission of the original motion and response and *177 while those motions were under consideration by the court, the defense filed a series of supplemental motions to which the prosecution replied. Final memoranda of law were not submitted until November 26, 1985. Those delays, however protracted, were "caused by the defendant for his own benefit, and with the court’s permission, under circumstances in which both the defendant and the court have determined that the adjournment is desirable” (People v Worley, supra, at 527; cf., People v Meierdiercks, 68 NY2d 613 [1986]). The defendant, by continuing to litigate the motions and failing to object to the adjournments, impliedly consented to the delays. (People v Worley, supra, at 528.) The court was unable to render decision on the motions until the final submissions.
The period between such submissions and the court’s decision of January 31, 1986 must also be deemed excludable under CPL 30.30 (4) (a). "The period to be excluded is not * * * a normal time reasonably to be assigned to the disposition of a similar motion. It is the period of delay * * * which in the individual case may be actually ascribed to consideration and determination of the particular motion” (People v Torres, supra, 60 NY2d, at 127-128; see, People v Conrad, 44 NY2d 863 [1978]). Similarly, the period following the court’s decision until its denial on February 18 of defendant’s motion to reargue the decision is excludable (People v Moorhead, 61 NY2d 851, 852 [1984]).
The period from denial of defendant’s motion to the next scheduled court appearance on February 28 was apparently devoted to plea negotiations. Defense counsel on that date represented that negotiations were ongoing and that there was a likelihood of disposition by plea. To the extent the People’s unreadiness on February 28 or subsequently is directly attributed to defendant’s action within a plea bargaining context, such delays would not be attributable to the People. (See, People v Friscia, 73 AD2d 702 [3d Dept 1979], affd 51 NY2d 845.) In light of the resolution of defendant’s motion on other grounds, an apportioning of this period to plea bargaining at defendant’s request or to other causes is unnecessary. For present purposes, the court will consider the period February 18 to May 28, during which the prosecutrix was engaged in other matters, chargeable to the People.
On May 28, 1986 the People announced their readiness to proceed to trial on the initial indictment, thus tolling the operative period of CPL 30.30 (1) (a) (People v Brothers, 50 NY2d 413, 417 [1980]; People v Worley, supra, 66 NY2d, at 527; *178 People v Heller, supra, 120 AD2d, at 613). Thus, of the 17 months that elapsed between filing the felony complaint on December 20, 1984 and the People’s announcement of readiness to proceed to trial on May 28, 1986, only five months were chargeable to the People: the three weeks and four days prior to arraignment (Dec. 20, 1984-Jan. 14, 1985); the three-week period of delay in serving an answer to defendant’s omnibus motion (in June 1985); and three months and 10 days between final decision on defense motions and the People’s announcement of readiness (Feb. 18-May 28, 1985). Thus, the People continued to have a month to prepare their case for trial.
SECTION (3) (b)
It "follows * * * from CPL 30.30 (3) (b) * * * that, notwithstanding that the People have answered ready for trial within the statutory time limit, a postreadiness motion to dismiss may be made” (People v Anderson, 66 NY2d 529, 536 [1985]). "A further implication of subdivision 3 (b) is that with respect to postreadiness delay it is the People’s delay alone that is to be considered, except where that delay directly 'results from’ action taken by the defendant within the meaning of subdivisions 4 (a), 4 (b), 4 (c) or 4 (e), or is occasioned by exceptional circumstances arising out of defendant’s action within the meaning of subdivision 4 (g)” (at 536).
The court finds that the People’s failure to continue in a state of readiness to try the original indictment was directly and entirely due to the defendant’s having negotiated a plea of guilty on the eve of trial, obtained a delay in the entry of the plea for his exclusive benefit (see, CPL 530.40 [3]), and subsequently reneged on the agreement with the court’s acquiescence, if not its blessing (see, CPL 220.60 [3]).
The explicit agreement and conceded understanding by defendants, their counsel, the court and prosecution as fully set forth on the record and substantiated at length by defendant’s allocution and express admission of guilt, would beyond doubt have constituted a conviction (CPL 1.20 [13]), which in turn would have expunged all previous statutory periods applicable to the indictment (CPL 30.30 [5] [a]), but for the court’s purposeful failure to enter the plea and its subsequent decision that no enforceable plea had been entered, the withdrawal of which would commence the prosecution anew (see, e.g., People v Williams, 72 AD2d 950 [4th Dept 1979]; People v *179 Juhans, 126 Misc 2d 868, 872-873 [Sup Ct, Queens County 1984]). Whether there was a plea of guilty enforceable against the defendant (see, People v Jones, 44 NY2d 76, 81-82 [1978]; People v Esposito, 32 NY2d 921 [1973]; see, People v Selikoff, 35 NY2d 227, 239-240 [1974]) or not (and this court believes there was), these circumstances were "exceptional” and arose directly out of the defendant’s action.
The witnesses assembled for trial on May 30, when the defendant was allocuted on the plea, were dispersed by July 11 when he was allowed to renege on his admission of guilt. The prosecutrix then informed the court that the People’s witnesses could not be recalled together before September 29, 1986. The defendant does not deny that the People’s witnesses were unavailable. Since their unavailability is directly attributable to an exceptional circumstance of defendant’s sole manufacture, the period from May 30 to September 29, 1986 is excluded under CPL 30.30 (3) (b).
The superseding indictment (7061/86) was filed on September 29. The People again announced their readiness to proceed to trial on October 1, 1986 when defendant was arraigned on the superseder. The subsequent delays attributable to defendant’s motions addressed to the new indictment are excludable (see, e.g., People v Moorhead, supra, 61 NY2d, at 852). On the return date, the case was transferred by the court to this part, also resulting in an excludable delay (see, People v Conrad, 44 NY2d 863, supra). When the matter came on before this court on November 19, an adjournment of six weeks (45 days) was granted for the People to respond to defense motions addressed to the superseding indictment. During the period between the return date on January 7, 1987 and the People’s ultimate response to the defense motions on February 4, the court indicated that it would charge all adjournments to the People. This constitutes 28 days which, aggregated with the five months of includable time prior to defendant’s plea on May 30, 1986, would bring the People to within a few days of the six-month statutory period. The court, however, finds that such an aggregation of pre- and postreadiness delay would be inappropriate upon the facts of this case.
The calendar notations that the January 7 to February 4, 1987 adjournments are includable within CPL 30.30 are indicative of the People’s responsibility for delay, but are not determinative. Whether a particular adjournment ultimately should be included within computation of the CPL 30.30 (3) (b) *180 period, depends upon such an inclusion serving, and not frustrating, the purposes of the statute (see, People v Berkowitz, 50 NY2d 333, 349 [1980]). The decision to aggregate prosecutorial delays following an announced readiness with those preceding the readiness for trial, depends upon two considerations: whether the cause of the subsequent delay in fact bears upon the People’s continued readiness for trial and whether a lesser sanction than outright dismissal is available to remedy the effects of delay. The "purposes motivating enactment of CPL 30.30 do not mandate postreadiness dismissal when a lesser sanction is available” (People v Anderson, supra, at 537), even though the cause of delay is neither exceptional nor resulting from action of the defendant (cf., e.g., People v Jones, 68 NY2d 717 [1986]).
The court finds that the People’s tardiness in responding to defense motions following their previous preparedness for trial on two separate occasions did not undermine their ability to proceed to trial. This is not to say that defendant was not entitled to a timely response to his motions or that the authority of the court to demand adherence to a motion schedule is eviscerated by the People’s readiness for trial. Dismissal of the indictment is simply not required by the purposes of CPL 30.30 within this circumstance (compare, People v Douglass, 60 NY2d 194 [1983]). Rather, the remedy lies in the defendant’s moving to preclude the prosecution from controverting the allegations of the defendant’s motion and for decision upon facts as alleged by the defense (see, CPL 210.45 [4] [c]; People v Anderson, supra, at 541).
SECTION (5) (a)
In order to simplify the further prosecution of this case and, hopefully, to establish finality in the litigation of motions tangential to the merits of the charges herein, the court holds that were the aggregate periods of delay from the filing of the felony complaint until the resolution of these issues to exceed six months of delay properly chargeable to the prosecution under CPL 30.30 (1) (a) and (3) (b), the court would not consider any portion of the delay previous to the final order nullifying the intended results of the plea bargain. The court finds the circumstances of this case sufficiently analogous to entry and subsequent withdrawal of a plea of guilty, to warrant exclusion of any time chargeable to the People prior to the nullification of defendant’s guilty plea, in any event. *181 CPL 30.30 (5) (a) states: "where the defendant is to be tried following the withdrawal of the plea of guilty * * * the criminal action * * * must be deemed to have commenced on the date the withdrawal of the plea * * * becomes final” (see, e.g., People v Williams, 72 AD2d 950 [4th Dept 1979], supra). While the court before which the plea was offered declared in reference to defendant’s motion "to withdraw” the guilty plea, that the motion was "moot because no plea was entered”, this court finds that there was, for purposes of CPL 30.30, the legal equivalent of a withdrawn plea of guilty.
The following facts are beyond dispute and are clearly set forth on the record of the proceedings of May 30 and July 11, 1986. The defendant intended to enter a plea of guilty to which the People had consented and of which the court approved. The allocution on the plea, which was more than constitutional or decisional law required (cf., People v Harris, 61 NY2d 9 [1983]), left no doubt about defendant’s understanding of the rights he waived by pleading guilty, about his desire to plead guilty, or about his guilt in fact. Defendant on several occasions rejected the court’s express invitation to renounce his guilty plea (see, e.g., People v Selikoff, supra, 35 NY2d, at 242). The defendant freely admitted his guilt and recited his actions by which every element of the crime was established, without prompting or hesitation (see, People v Thomas, 53 NY2d 338, 344-345 [1981]). It is apparent from the court’s remarks contemporaneous with the plea allocution, and from defense counsel’s remarks contemporaneous with nullification of the plea, that the intent of the court and understanding of the defendant was that formal entry of the plea would be stayed solely for the purpose of avoiding mandatory remand of the defendant upon his conviction for a class A felony (CPL 530.40 [3]; compare, People v Gamble, 111 AD2d 869 [2d Dept 1985]; People v Innes, 111 AD2d 356 [2d Dept 1985]). There is no doubt that the defendant, under these circumstances, could have enforced the terms of the plea bargain even against the court (see, e.g., People v McConnell, 49 NY2d 340 [1980]; People v Matthews, 71 AD2d 864, supra; People v Griffith, 43 AD2d 20, 25 [1st Dept 1973]). This is not a case in which the court was unable to abide by its promise for reasons disclosed in the presentence investigation or other good cause and, consequently, afforded the defendant an opportunity to withdraw his plea (see, e.g., People v Selikoff, supra). On the contrary, under the circumstances, the court could have compelled adherence to the plea by the defendant had it chosen to do so *182 (compare, People v Jones, 44 NY2d 76 [1978]). The court formally accepted the plea at the commencement of the proceeding on July 11. It was within the court’s discretion to set the plea aside at defendant’s request (CPL 220.60 [3]). There is no reason, in this court’s view, to impose as an absolute condition to entry of a plea of guilty, the pro forma arraignment by the court clerk, which is nowhere required by the governing statute (CPL 220.30, 220.50, 220.60), and where the constitutional prerequisites to a knowing and voluntary admission of guilt are clearly established (People v Selikoff, supra; People v Harris, supra). To neglect such procedure, if it were a defect, would not vitiate the integrity of the plea (compare, People v O’Connor, 14 NY2d 62 [1964]; People v McCloud, 64 AD2d 972 [2d Dept 1978]). The agreement to permit the defendant to remain at liberty following his admission of guilt to a class A felony was in derogation of the People’s rights and had no bearing on the integrity of the plea bargain, as a matter of constitutional or statutory law, nor as a matter of public policy (compare, People v Cates, 104 AD2d 895 [2d Dept 1984]). It is apparent that the court found no impediment to entry of the plea other than the absence of the clerk’s arraignment, in that the plea of the codefendant Reilly, who also remained at liberty following his allocution on May 30, was accepted and entered on July 11.
To allow the defendant to preview the People’s case, to disperse the People’s witnesses upon a supposed plea left unperfected for defendant’s benefit, and then to obtain the further benefit of the speedy trial statute as if no plea had been negotiated, would give the defendant more than he is equitably entitled to receive, and would unfairly prejudice the People (compare, People v Esposito, 32 NY2d 921, supra; People v Selikoff, supra, 35 NY2d, at 239-240; People v Johnson, 48 AD2d 643 [1st Dept 1975]; People v Lynn, 28 NY2d 196, 201-202 [1971]). The court holds that defendant, by his lengthy, formal and counseled admission of guilt, having obtained an adjournment of the People’s case then readied for trial, and by his subsequent application to nullify the effect of that admission, forfeited his right to have the prosecution charged with any previous delays accrued in the proceedings (CPL 30.30 [5] M).
Accordingly, the court holds that the entire period prior to the entry of the order denying the People’s motion to enforce the negotiated plea of guilt, on September 17, 1986, excludable (see, People v Passero, 96 AD2d 721 [4th Dept 1983]; People v *183 Gaggi, 104 AD2d 422, 424 [2d Dept 1984] [concurring opn per Titone, J.]). As previously noted, the People announced their readiness for trial on the superseding indictment on October 1. This constitutes two weeks of includable time under CPL 30.30 (1) (a). Assuming that the postreadiness delay of 28 days while awaiting the People’s response to defense motions is properly includable, the People continue to have 4!^ months to prosecute this indictment (People v Williams, 72 AD2d 950, supra).
Were the circumstances of this case insufficient to justify a forfeiture of defendant’s statutory speedy trial rights prior to nullification of his plea, as a matter of law (see, People v Howe, 56 NY2d 622, 624 [1982]), the court would nonetheless find an enforceable waiver of those rights upon the facts (People v Thomas, 53 NY2d 338, 342, n 2 [1981], supra). Prior to his plea, the defendant made no motion to enforce his statutory rights under CPL 30.30. Had the plea been entered, as defendant obviously intended as of the conclusion of the proceedings of May 30, no statutory speedy trial right would have been preserved (People v Howe, supra). It is, therefore, apparent that defendant may be said to have waived those rights as part of the plea bargain (compare, People v Rodriguez, 50 NY2d 533 [1980]; cf., People v Blakely, 34 NY2d 311 [1974]). Albeit the court relieved the defendant of his agreement to forego litigation of the question of his guilt, there is no basis for relieving him of his intentional waiver of the right to object to those periods of delay preceding his proffered plea (compare, People v Lynn, supra, 28 NY2d, at 202; People v Taylor, 65 NY2d 1, 5 [1985]). To permit the defendant to be completely relieved of his bargain upon his own motion, based upon presumed error committed solely for his benefit, would be to condone bad faith in the plea bargaining process (see, People v Jones, supra, 68 NY2d, at 719).
CPL 30.20
The defendant’s constitutional right to a speedy trial (US Const 6th, 14th Amends; CPL 30.20; Civil Rights Law § 12) is not subject to forfeiture or implied waiver, when preserved by a timely motion (People v Taylor, supra, 65 NY2d, at 6; cf., People v Rodriguez, 50 NY2d 553, supra). Unlike CPL 30.30, the constitutional guarantee is not limited to delay caused by a lack of prosecutorial diligence, but is "intended to ensure fair and humane treatment of an accused person by protecting *184 him or her against prolonged imprisonment while awaiting trial, providing relief from the anxiety and public suspicion that accompanies a criminal accusation which remains untried, and reducing the possibility that through the loss of witnesses or the dulling of memory the means of proving his or her innocence may be lost” (People v Anderson, supra, 66 NY2d, at 534-535). Therefore, delays attributable to the court, as well as to the People, are within constitutional scrutiny (see, e.g., People v Watts, 57 NY2d 299, 302-303 [1982]). The Court of Appeals has designated five factors to be considered in evaluating an alleged deprivation of the constitutional speedy trial guarantee: "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay” (People v Taranovich, 37 NY2d 442, 445 [1975]).
It has now been almost 27 months since the defendant was arrested in regard to this alleged sale. While this is a prolonged delay, "there is no specific temporal duration after which a defendant automatically becomes entitled to release for denial of a speedy trial” (People v Taranovich, supra, at 444-445). "[N]o one factor * * * is necessarily decisive or determinative of the speedy trial claim, but rather the particular case must be considered in light of all the factors as they apply to it” (at 445). It is significant that a substantial portion of the delay was due to defendant’s motions, including a substitution of counsel (IV2 months), discovery and omnibus motions (six months under 8275/84; two months under 7061/ 86); and his motion to nullify his plea (two months). This accounts for an entire year of delay (see, e.g., People v Lomax, supra, 50 NY2d, at 358). An additional two months are directly attributable to the delay caused by entry and subsequent nullification of the plea (see, e.g., People v Friscia, supra, 51 NY2d, at 847). This leaves half of the delay attributable to the State.
The court can find no significant prejudice to the defense as a result of the delay. There is no allegation of witnesses lost or of memories decayed (cf., e.g., People v Watts, supra, 57 NY2d, at 303; People v Lomax, supra, at 358-359). The defendant has been at liberty for the entire period, except for three weeks following the nullification of his plea. The charges here are of the highest degree of severity. The record indicates that the presentation of the case involves the coordination of some *185 17 members of various law enforcement agencies. It is not without significance that the People have twice been prepared to proceed to trial within the period at issue and, in fact, conducted a full trial nine months ago, which would have included the charges against this defendant but for his guilty plea (compare, People v Collins, 98 AD2d 947, 948 [4th Dept 1983]).
Consequently, the court holds that the defendant has failed to establish a violation of his right to a speedy trial of constitutional magnitude.
[Portions of opinion omitted for purposes of publication.]