People v Meigh (2024 NY Slip Op 50372(U))

[*1]

People v Meigh

2024 NY Slip Op 50372(U)

Decided on April 8, 2024

Justice Court Of The Village Of Grand View-On-Hudson, Rockland County 

Ruby, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 8, 2024
Justice Court of the Village of Grand View-On-Hudson, Rockland County 

People of the State of New York, Plaintiff,

against
Alexander D. Meigh, Defendant.

Case No. 21-090068

For the People:
Rockland County Senior Assistant District Attorney Katherine McLaughlin
For the Defense:
Jay R. Golland, Esq.; New City, NY

Marc R. Ruby, J.

BACKGROUND
To begin, compiling myriad citations, across various agencies or governmental subdivisions, would not be expedient. So, this Court takes and employs judicial notice, in reciting the following background narrative, as provided under NY CPLR 4511 [FN1]
.
Grand View-On-Hudson ("GVOH") is a Rockland County village, within the Town of Orangetown. For many years, GVOH was sandwiched between the Village of Piermont, to its south, and the Village of South Nyack, to the north. To this end, GVOH and South Nyack shared a police department. And while both villages maintained distinct justice courts, proceedings were held in shared a facility, and South Nyack's court provided clerical services for GVOH's. These arrangements persisted for some time.
Then, in December 2020, a majority of electors in South Nyack voted for dissolution of [*2]the Village. Thereafter, the shared police department ceased existing. South Nyack became a hamlet. And the Orangetown Police Department assumed responsibility for policing South Nyack. In a similar vein, South Nyack's justice court was absorbed by Orangetown's own justice court.
Meanwhile, GVOH kept its incorporated status, with the Piermont Police Department providing police protection. In addition, traffic tickets written by the State Police, on certain stretches of the New York State Thruway, are also returnable, and heard, in GVOH's justice court. Although GVOH retained its justice court in the wake of South Nyack's dissolution, finding an operational footing, without the cooperation and assistance of South Nyack, proved challenging. These difficulties, compounded by the covid-19 pandemic, and personnel changes, effectively mothballed GVOH's justice court for a duration.
In this context, on August 10, 2021 the Defendant was charged with speeding, over the State limit, in contravention of NY Veh. & Traf. Law § 1180(B), under simplified information ("UTT"). The Defendant promptly entered a plea of not-guilty, under an appearance notice from counsel. Yet, a notice-to-appear for a conference was never dispatched to the Defendant. Nor did the Defendant receive any other correspondence from the court.
However, recently, GVOH's justice court resumed regular operations. A village justice was appointed, and subsequently elected. Inasmuch as the Justice formerly prosecuted non-criminal violations and infractions for GVOH, conflicts arose on cases which had accrued on the docket. As such, the undersigned was temporarily assigned GVOH's Acting Village Justice, under Order of the Administrative Judge of the Ninth Judicial District. Upon the assignment's expiration, GVOH's governing body appointed the undersigned to serve as GVOH's Associate Village Justice, until April 15, 2024. See NY Village Law § 3-301(2)(a).
On April 5, 2024, the Defendant filed a motion seeking dismissal of the UTT on speedy trial grounds. While the motion is not unusual or unconventional, it happens to coincide with some intricacies: 1) The undersigned's appointment will very soon expire; 2) It is not yet determined when the Village Justice will next sit in Vehicle & Traffic session; and, 3) It is undetermined who will prosecute at the next Vehicle & Traffic session.
In GVOH,criminal matters are invariably prosecuted by an ADA in the Rockland County District Attorney ("DA")'s Office. But the DA has delegated the prosecution of non-criminal traffic infractions to a municipal prosecutor. This is not the least bit unusual, and is not controversial in any way, shape, or form. To be sure, the Court of Appeals long ago held: other public officers, or private attorneys, may appear, and conduct prosecutions on a DA's behalf, when the DA consents thereto. People v. Van Sickle, 13 NY2d 61, 63 (1963).
There being no appearance notice by a municipal prosecutor for the court's next Vehicle & Traffic session, the undersigned was reluctant to decide the motion ex parte, and without notice to the People. Accordingly, the Defendant's motion was presented to the last ADA to appear in this court [FN2]
. Upon review, in said capacity, the People do not oppose the motion.
Of course, to whatever extent the DA's Office participated in this matter (and only upon the court's invitation), the DA has not done anything to reassume responsibility for prosecuting non-criminal infractions and/or violations in GVOH. Rather, the Van Sickle delegation shall remain effective, until such time as the DA states otherwise.

 LEGAL ANALYSIS
A defendant charged with a traffic infraction, is afforded constitutional speedy trial rights but not under § 30.30 of the Criminal Procedure Law. People v. Colter, 76 Misc 3d 28, 30 (2d Dept 2022). Rather, constitutional speedy trial rights in traffic infraction cases are maintained under CPL § 30.20, and Amendments VI & XIV to the U.S. Constitution. People v. Persaud, 21 Misc 3d 522, 526 (Crim Ct, Kings County 2008); People v. Kreinen, 2002 NY Slip Op 40359(U), *1 (App Term 2002); and, People v. Taylor, 189 Misc 2d 313, 314 (2d Dept 2001).
There is no specific, hard-and-fast temporal duration for determining whether these speedy trial rights have been infringed. People v. Taranovich, 37 NY2d 442, 445 (1975). Rather, courts reviewing constitutional speedy trial contentions, should employ Taranovich's five-factor test. Colter, supra. Namely:
(1) the extent of the delay;
(2) the reason for the delay;
(3) the nature of the underlying charge;
(4) whether there has been an extended period of pretrial incarceration; and,
(5) whether there is any indication the defense has been impaired by the delay.
Taranovich, at 445.
All of the factors must be applied, and considered. Id. Other decisions by vehicle & traffic courts have fleshed the factors out. For instance, delay resulting from court congestion, should not be attributed the People. People v. Persaud, 21 Misc 3d 522, 524 (Crim Ct, Kings County 2008). On the other hand, traffic infraction defendants must preserve their speedy trial rights, by answering the charge, and appearing as required. People v. Simonetti, 62 Misc 2d 285, 287 (Suffolk Dist Ct 1969). Importantly, delays solely attributable to the court can contribute to a deprivation of constitutional, and CPL § 30.20 speedy trial rights. People v. Amendolara, 135 Misc 2d 170, 184 (Sup Ct, NY County 1987). And in all events, a case should not be permitted to endlessly linger. Persaud, at 526.

DISCUSSION
In People v. Persaud, 21 Misc 3d 522 (Crim Ct, Kings County 2008), the defendant moved for dismissal of a traffic infraction, for want of constitutional speedy trial guarantees. In granting the motion, the Persaud Court held neither the People, nor the defense, could be held accountable for unreasonable delays.
In People v. Taranovich, 37 NY2d 442, 447 (1975) the Court of Appeals found there was no deprivation of constitutional speedy trial rights where there was a one-year delay between the alleged occurrence of a felony, and an indictment. There, the Taranovich Court noted that even [*3]when protracted delay results from prosecutorial inattention, a defendant is not automatically entitled to a dismissal.
Here, since the Defendant likely had no prior opportunity to be heard, any time periods governing the filing of the instant motion are hereby enlarged, and the motion is deemed timely. With this established, attention now turns to Taranovich.

 1. THE EXTENT OF THE DELAY
The Defendant was charged under a UTT, issued on August 10, 2021; this was 972 days ago. The Court acknowledges there is no "specific temporal duration" which automatically deprives a defendant of constitutional speedy trial rights. See Taranovich, at 445. Yet, 972 days is an exceedingly long time for not adjudicating a traffic infraction. In Taranovich, the contested time period was one year. Here, the contested time period is nearly three times as long. All the while, courts must not allow cases to linger endlessly, under Persaud. As such, this factor is construed in the Defendant's favor.

 2. THE REASON FOR THE DELAY
The Court finds the delays here resulted from the antecedent period, where the court was not in regular session. Accordingly, none of the delay is imputed upon, or attributable to the People. On the contrary, the DA's graciousness in no-opp'ing this motion, speaks volumes toward the integrity and decorum with which this case has been handled on both sides of the "v." Indeed, it's hard enough to prosecute a case, but it's downright near impossible, when the courthouse is closed.
Moreover, the Defendant has been fully compliant with Simonetti. The Defendant has been diligent in answering the charge, retaining counsel, following up, and has not done anything to cause delay. On the contrary, the Defendant has actively been trying to resolve the case. Accordingly, under Persaud and Amendolara, the court-related delay is not chargeable to the People, and has affirmatively infringed upon the Defendant's speedy trial rights.

 3. THE NATURE OF THE UNDERLYING CHARGE
Without dismissing the import, and without minimizing the seriousness of resultant and potentially catastrophic consequences, the contravention of NY VEH. & TRAF LAW § 1180(b) does not top the schedule of serious criminal, or quasi-criminal offenses. The legislature recognizes this, because the maximum monetary penalty attached for a conviction is $300.00. Nevertheless, by objective measure, the Defendant still took this prosecution exceedingly seriously. And this inures greatly to the Defendant's benefit, by militating toward dismissal. 

4. WHETHER THERE HAS BEEN AN EXTENDED PERIOD OF PRETRIAL INCARCERATION
Mercifully, the Defendant has not been subjected to any pre-trial detention. However, as noted above, the Defendant has very much been living under the cloud of this charge, for an exceedingly protracted period. And the Defendant's diligence in trying to resolve the case demonstrates that the Defendant has been subjected to difficulties, even whilst presumed innocent. 

5. WHETHER THERE IS ANY INDICATION THE DEFENSE HAS BEEN IMPAIRED BY THE DELAY
In moving for dismissal, the Defendant credibly states he never received an appearance notice, or any other correspondence from the court. In addition, the UTT is so old, it actually directs the Defendant to appear at a court facility that's no longer in use. And at this point, bringing the complaining officer into court might prove difficult. Moreover, despite having retained counsel, no proceedings or motion practice transpired. As a result, there are no transcripts, or other evidence, which might preserve testimony, preserve issues for appeal, or assist the defense in any other respects.

 ORDER
As consistent with the foregoing, the Defendant's motion is GRANTED. The case is DISMISSED. With this, an ADA leaves with a promotion. A seasoned defender leaves with another success. Early Spring Easterlies leave with the Tappan Zee roiling. And an associate village justice, leaves [FN3]
the bench with the Grandest of Views.
IT IS SO ORDERED. Dated: 8 April 2024
Grand View-On-Hudson, NY
Marc R. Ruby
Associate Village Justice

Footnotes

Footnote 1:The Court recognizes this case is not on-trial; nor are evidentiary issues being decided. However, the Second Department has held: "judicial notice may be taken by a court at any (emphasis added) stage of the litigation even on appeal." Caffrey v. N. Arrow Abstract & Settlement Servs., Inc., 160 AD3d 121, 127 (2d Dept 2018).

In addition, the rules of evidence in civil cases, are also applicable to criminal cases. People v. Calabro, 7 Misc 2d 732, 734 (NY Rec's Ct 1957). And these same rules apply for Vehicle & Traffic. People v. Iverson, 37 NY3d 98, 102 (2021).

Footnote 2:The court would be remiss in failing to note the impressive caliber of the young (but quickly rising) class of ADAs staffing the DA's Office. To this end, this court has yet to encounter an ADA, who places a particular outcome, over the administration of justice. And this court similarly notes the exceptional caliber of the Rockland County defense bar, comprised, in no insignificant part, of attorneys who began their practice in that same office. 

Footnote 3:But remains sitting as Piermont's elected village justice.